THEODORE F. TILLINGHAST *vs.* U. S. SAVINGS AND LOAN
ASSOCIATION.

PROVIDENCE—JULY 24, 1901.

PRESENT : Stiness, C. J., Rogers and Blodgett, JJ.

(1) *Building and Loan Association. Withdrawal of Stockholders. Notice.
Statutes. Chapter 131, Laws of Minnesota.*

The by-laws of a building and loan association incorporated under the
laws of Minnesota, cap. 131, provided that members holding stock in
class "E" after sixty days' notice might withdraw their stock at the
maturity of any dividend coupon after three years from the date of their
certificate, and that the holder should receive one hundred dollars, to-
gether with the amount of any due and unpaid coupon.  Chapter 131,
section 27, provided that "all withdrawing shares shall be subject to
a *pro rata* charge of such losses (impairing the capital) with those re-
maining undrawn " :—

*Held,* that after the notice of withdrawal had expired the claim of the re-
tiring member was beyond any assessment or power of diminution by
the corporation.  The amount to be paid had then become fixed, and
must be paid in its order.  The status of the member had been changed
from that of a stockholder to that of a creditor.

DEBT.  The facts are stated in the opinion, and in the
opinion directly preceding.  Heard on petition of defendant
for new trial, and petition denied.

PER CURIAM.  The defendant's petition for a new trial is
denied, and judgment will be entered upon the decision of
Mr. Justice Douglas for the reason assigned by him in said
decision, which is adopted as the opinion of the court.

DECISION.

DOUGLAS, J.  The plaintiff being the holder of a certificate
for twenty-five shares of the capital stock of the defendant
corporation, of class E, of the par value of one hundred dollars
per share, with two coupons attached, for $87.50 each, one
due June 15, 1898, and one due December 15, 1898, on
December 20, 1898, gave notice of his intention to withdraw
the same, and the defendant accepted said notice, and on

January 30, 1900, notified the plaintiff that it was ready to pay the amount it admitted to be due, but claimed the right to deduct a tax of $18.75, a reduction of ten per cent., amounting to $250, as of October 31, 1897 ; a reduction of ten per cent. of the book value of the stock, amounting to $223.-13, as of October 31, 1899 ; and a reduction of ten per cent. on the face value of the two coupons, amounting to $8.75 each. The defendant bases its right to make these ten per cent. charges upon the sections of the laws of Minnesota, which we have considered in the opinion in 23 R. I. 243, and it is only necessary here to consider the different circumstances of this case.

The first ten per cent. reduction was made about the 11th day of December, 1897, when it was found that the capital of the company had been impaired by losses or depreciation of its assets in the sum of $144,149.34, which was in excess of its reserve fund and profits undistributed, but was not in excess of its reserve fund and all profits earned, including such profits as had been credited on the books to various classes of unmatured stock. For the reasons assigned in the former opinion, I find that this assessment or reduction of the plaintiff's stock was not legal. Most of the stockholders, however, of classes E and F consented to this assessment, and so the reduction of the liabilities of the corporation was substantially effected. Again, in 1899 an examination of the assets of the company was made, from which it appeared that the capital of the company, as carried on its books, had been further impaired by losses and depreciation of assets in the sum of $103,731.31, which was in excess of the undivided profits earned and of the reserve fund, but not in excess of the profits earned including those credited on the books to unmatured stock of various classes. Neither in this case, nor in the other, had the assets of the company become less than the amount of capital actually paid in, and this assessment, like the other, I find to be illegal.

(1) The plaintiff urges, as an additional ground for holding the second assessment invalid, that notice of withdrawal had been given more than sixty days before the so-called loss was as-

certained and the charge ordered by the company. He cites several authorities in support of this claim.

In *Nat. Guarantee L. & T. Co.* v. *Yeatman*, (Ala.) 25 So. R. 1003, it was held that a stockholder, after giving notice of intention to withdraw, could not be charged with a subsequent assessment, his relation to the company having become that of a creditor. In that case there was a by-law similar to the provision of the statute in this, that only one-half of the income derived from the issue of new stock in any month should be appropriated to withdrawals; but it does not appear that it was provided, as it is in the Minnesota statute, that all withdrawing stock should be assessed *pro rata* with the stock remaining.

*Building & Loan Society* v. *Bolin*, 12 Col. Ct. App. 304, decides that when a withdrawal notice is complete, the time of notice required having elapsed, the withdrawing stockholder becomes a creditor for the amount fixed as the withdrawal value of his stock when he gave the notice; it expressly disclaims a decision "that withdrawing members are not chargeable with their share of losses incurred by the society prior to the service or perfecting of their notices of withdrawal."

*Moore* v. *Southern Mutual B. & L. Assn.*, 50 So. Ca. 89, holds that one who has given notice of withdrawal according to the by-laws of such a society, ceases thereupon to be a stockholder and becomes a creditor of the corporation.

In *Hennighausen et al.* v. *Tischer*, 50 Md. 583, the court say, p. 589 : "A withdrawal is a direct reduction of the capital to the amount of the shares held by the member withdrawing, and a conversion of the stock into a debt due by the corporation to him, after deducting all his liabilities, as in case of a partner retiring from a firm."

The principle laid down by these cases is reasonable and just. If the scheme of the organization contemplates and allows the withdrawal of a stockholder from the corporation, the severance of their relations must be complete and final at some definite time, and his liability for losses, unless other-

wise agreed, must cease at the time when his right to participate in profits ceases.

In the case of this class E stock, it is provided that the withdrawal shall be at the maturity of any dividend coupon after three years from the date of the certificate, and that the holder shall receive one hundred dollars per share, together with the amount of any due and unpaid coupon. By-laws, section 5.

Any stockholder of class E, then, having given sixty days' notice terminating on the 15th of December or the 15th of June, has done everything required of him to perfect his right to withdraw. From that time forth he stands in line with other creditors until the funds of the society applicable to that purpose become available to pay him in his turn.

The clause of section 27, chapter 131, relied upon to support this reduction is, "all withdrawing shares shall be subject to a *pro rata* charge of such losses with those remaining undrawn." The withdrawing shares primarily intended are clearly, from the context, withdrawing unmatured shares, not shares originally fully paid.

The next clause makes it the duty of the company in the event contemplated to adjust and distribute such losses *pro rata* as a charge upon "the shares of stock in force." Now, if we can extend the meaning of this section by implication to include universally all classes of stock withdrawing, we cannot extend its application to such retiring stock after it has been withdrawn and is no longer in force as stock and the former stockholder has become a creditor.

After the notice has expired, then, I find that the claim of the retiring member is beyond any assessment or power of diminution by the corporation. The amount to be paid has then become fixed, and it must be paid in its order.

I suppose that the claim of right to reduce the coupons is based upon the limitation of the rate of interest agreed to be paid on this class of stock, viz., to seven per cent., the interest being reckoned on the reduced valuation of the principal; but if the reduction on the principal fails, the reduction in value of the coupons fails with it. The company tacitly

admits its obligations to pay seven per cent. on the true value of the stock.

I find, therefore, that the plaintiff is entitled to recover the full amount claimed, less the Rhode Island State tax.

Decision for the plaintiff for $———, and costs.