## ANTON MUELLER AND ANOTHER v. C. N. OBER AND OTHERS.[1]

October 7, 1927.

No. 26, 063.

**In case of conflict contract is to be governed by law of state where it would be valid.**

1. Where there is a conflict of law, the general rule, that a contract is to be governed by the law of the place of performance, must yield to the presumption that the parties intended to contract with reference to the law of the state in which the contract would be valid.

**Tender kept good prevented foreclosure of mortgage because of default.**

2. The record supports a finding that a tender had been made and kept good and that there was no default authorizing the foreclosure of a mortgage.

Contracts, 13 C. J. p. 247 n. 10; p. 249 n. 19; p. 251 n. 35; p. 258 n. 16; p. 259 n. 18.
Evidence, 22 C. J. p. 157 n. 43.
Mortgages, 41 C. J. p. 857 n. 35; p. 868 n. 49 New.
Tender, 38 Cyc. p. 178 n. 6.

---

See 5 R. C. L. 940; 1 R. C. L. Supp. 1558; 4 R. C. L. Supp. 364; 5 R. C. L. Supp. 309; 6 R. C. L. Supp. 339.

Action in the district court for Faribault county to foreclose a mortgage. There were findings for the defendants, and the plain-

[1]Reported in 215 N. W. 781.

tiffs appealed from an order, Haycraft, J., denying their motion for a new trial. Affirmed.

*Meighen, Knudson & Sturtz* and *J. H. Schnorenberg,* for appellants.

*Putnam & Carlson, Charles E. Conant* and *Frundt & Morse,* for respondents.,

WILSON, C. J.

Appeal from an order denying a motion for a new trial.

One Neasham and wife, residing at Nevada, Iowa, on March 1, 1915, executed and delivered to plaintiffs, residing in Wisconsin, two promissory notes aggregating $10,900, due in ten years, and secured the same by a mortgage upon a farm in Faribault county, Minnesota. A provision for interest at five per cent before and eight per cent after maturity was contained in the notes, but not in the mortgage. The notes were Iowa forms and the provision for payment at a bank in Iowa was stricken and a provision for payment at a bank in Minnesota inserted.

Neasham and wife, soon after March 1, 1915, conveyed the farm to defendant Brunson, who assumed and agreed to pay the mortgage. He paid interest maturing March 1, 1917 and 1918. In November, 1917, he conveyed the farm to defendant Minnie Ober, who assumed and agreed to pay the mortgage. She paid interest maturing March 1, 1919, 1920, 1921, 1922, 1923, 1924 and 1925, totaling $3,815.

On March 1, 1925, plaintiffs and Minnie Ober and her husband made an extension agreement to March 1, 1928, fixing the interest at six per cent, payable semi-annually.

In violation of the provisions of the mortgage the 1922 taxes became delinquent and the farm was sold for taxes. Plaintiffs redeemed and prosecuted this action to foreclose the mortgage under the authority expressed therein to declare the whole amount due in case of default.

The trial court adopted defendants' version, that the notes were Minnesota contracts and by virtue of G. S. 1923, § 7036, the provision for a larger rate of interest after maturity forfeited all inter-

est, and held that defendant Ober was entitled to credit on the principal in the sum of $3,815. The court said there was no default and dismissed the action.

1. The parties did not expressly state their intentions as to the law by which the contract was to be governed. We must therefore find that intention by inference from the circumstances and from the terms and nature of the contract. Neasham came to Minnesota to inspect the farm. He and plaintiffs never met. A preliminary contract was sent by plaintiffs to Neasham, which he signed at Nevada, Iowa, in November, 1914, and mailed to plaintiffs. Aside from the trip to Minnesota, the negotiations were entirely by correspondence. The deed was mailed to the parties in Iowa. The notes and mortgage were mailed to a person at Wells, Minnesota, for plaintiffs.

The parties were not familiar with the laws of Minnesota. In all probability they never considered what law was to govern their contract. The provision in the contract for greater interest after maturity forfeits all interest if the law of Minnesota is to govern but is valid in the state of Iowa.

The general rule is that the validity of contracts, including promissory notes, is to be determined by the laws of the place of performance. Swedish-Am. Nat. Bank of Minneapolis v. First Nat. Bank of Gardner, 89 Minn. 98, 94 N. W. 218, 99 A. S. R. 549; Ames v. Benjamin, 74 Minn. 335, 77 N. W. 230. This rule is not inflexible because it rests upon experience and, indeed, is the result of a permissible inference which usually follows a designated place of performance. It merely stands in the place of evidence. It rests upon presumption. Its applicability is based upon the presumed consent of the parties. It is a recognized rule which points the way in the absence of something more convincing. It is really a rule of administration. The rule is prima facie. It may yield to particular facts or circumstances or to stronger presumptions. When presumptions are in conflict the weaker must give place to the stronger. 10 R. C. L. 869. There is not, however, much to be said concerning a conflict of presumptions, because in most cases, as

here, the one fades away upon the appearance of the other; but the presumption, hereinafter recognized, being in the nature of a special or favored one, takes precedence over a general presumption.   22 Am. & Eng. Enc. Law (2 ed.) 1236; 9 Enc. Ev. 892.

There are some facts and circumstances in this case that tend to destroy the basis for the application of the general rule because they are inconsistent with the conclusion that the parties intended that the laws of Minnesota should control.   The contract is unusual in that plaintiffs were to wait ten years for the payment of $10,900 and receive no interest.   It expressed a provision for the payment of interest, which does not indicate that plaintiffs did not expect to receive interest nor does it reflect an intention of the debtors that they were not to pay interest.   Parties do not usually enter into solemn, written contracts which are not to be performed.   The record discloses no reason why plaintiffs should not insist upon interest.   They did not cause the provision for larger interest after maturity to be inserted in the notes.   That was apparently in the Iowa forms which the debtors used only as a matter of convenience. Nor do the purchasers claim that they expected to escape the burden of interest by affirmatively changing the place of payment to Minnesota.   The improbability of the parties ever intending to make such an unusual and improvident contract weakens the presumed consent of the parties to the application of the general rule and supports the presumption, hereinafter mentioned, in opposition thereto.

Respondents point to the affirmative act of debtors in changing the form of the note to make it payable at a bank in Minnesota near the land and that the papers were sent to a person in that bank for delivery to plaintiffs.   But there is nothing to indicate that plaintiffs wished their money paid at this point several hundred miles from home.   Plaintiffs were not parties to the change and never saw the papers until after the mortgage was recorded.   Their failure, upon receiving the papers, to appreciate the peril involved is not persuasive evidence of their intention to make the forbidden contract now attributed to them.

We are of the opinion that the general rule must give way to the presumption that the parties intended to contract with reference to a law that would uphold their contract rather than one that would wholly nullify a substantial part of it, especially where the nullification would work such a hardship as here involved. There was no desire to evade any law. The parties acted in good faith. They cannot be presumed to have consented to a law which would invalidate their solemn engagements. Nor will a presumption be indulged that the parties intended to violate a law. There were two laws (perhaps three) with reference to any one of which they could have contracted, and the contract accords with one, viz. the Iowa law. It must be presumed that the parties so intended, because they had their election, acting in good faith, to make the contract according to their selection. The presumption is that the parties intended to contract with reference to the law of the state in which the contract would be valid. Green v. Northwestern Trust Co. 128 Minn. 30, 150 N. W. 229, L. R. A. 1916D, 739; Mott v. Rowland, 85 Mich. 551, 48 N. W. 638; Hieronymus v. N. Y. Nat. B. & L. Assn. (C. C.) 101 F. 12, affirmed in 107 F. 1005, 46 C. C. A. 684, L. R. A. 1916D, 755; Crawford v. Seattle, R. & S. Ry. Co. 86 Wash. 628, 150 P. 1155, L. R. A. 1916D, 732; Midland Sav. & Loan Co. v. Henderson, 47 Okl. 693, 150 P. 868, L. R. A. 1916D, 745; Walker v. Lovitt, 250 Ill. 543, 95 N. E. 631; Midland Sav. & Loan Co. v. Solomon, 71 Kan. 185, 79 P. 1077; Manhattan Life Ins. Co. v. Johnson, 188 N. Y. 108, 80 N. E. 658, 9 L.R.A.(N.S.) 1142, 11 Ann. Cas. 223; Exchange Bank v. McMillan, 76 S. C. 561, 57 S. E. 630; Bank v. Doherty, 42 Wash. 317, 84 P. 872, 4 L.R.A.(N.S.) 1191, 114 A. S. R. 123; Dicey, Conflict of Laws, pp. 560, 561; Dupree v. Virgil R. Coss Mtg. Co. 167 Ark. 18, 267 S. W. 586, 1119; 2 Wharton, Conflict of Laws (3 ed.) § 507; Commercial Bank v. Auze, 74 Miss. 609, 623, 21 So. 754, 755; 39 Cyc. 899; Annotations, 4 L.R.A.(N.S.) 1191; Brown, Brothers & Co. v. Freeland, 34 Miss. 181; Depau v. Humphreys, 8 Mart. N. S. (La.) 1; Thompson v. Edwards, 85 Ind. 414; Cotheal v. Blydenburgh, 5 N. J. Eq. 17; Brown v. Gardner, 4 Lea (Tenn.) 145; Miller v. Tiffany, 1 Wall. 298, 17 L. ed. 540; Kellogg v. Miller (C. C.)

13 F. 198; Newman v. Kershaw, 10 Wis. 275 (333); Vliet v. Camp, 13 Wis. 221; New England Mtg. Sec. Co. v. Vader (C. C.) 28 F. 265; Brown v. Am. Finance Co. (C. C.) 31 F. 516; 4 Phillimore, Int. Law, par. 654, p. 471. The general rule must yield to this specific and potential presumption. We hold that the notes were made with reference to the laws of Iowa and are valid contracts according to their terms.

2. Was there a default authorizing a foreclosure? Taxes for 1922 became delinquent and plaintiffs redeemed from a sale therefor. This gave occasion for plaintiffs to declare the full amount due. They put the papers in the hands of their attorneys to so declare by instituting the action to foreclose. Before counsel acted the owner of the fee, Ober, sent direct to plaintiffs a draft covering the taxes, interest and penalties. Plaintiffs' counsel in Wisconsin returned the draft for the sole reason that the papers had been sent to plaintiffs' Minnesota counsel to foreclose. Up to that time plaintiffs through their counsel had not in fact exercised the right which they had to declare the full amount due because of the default arising from nonpayment of taxes. The draft has been kept by defendant Ober and was put in evidence. She was at all subsequent times able to produce it. Obviously she wished to pay. There can be no doubt that plaintiffs could have had their money at any time had they expressed a willingness to accept it. The law is jealous of the rights of a mortgagor. The record sustains the finding of the court that the tender was kept good. It follows that because of want of a default the plaintiffs were not entitled to foreclose. The action was premature, and hence the order of the trial court dismissing the action is affirmed. The trial court will modify its findings in accordance with this opinion.

The other questions presented in the briefs are unimportant.

Affirmed.